FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
10/16/2019 11:01 AM
James A. Noel
CLERK OF THE COURT
Catherine Chavez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT

JESSICA LOWTHER
and KELLY STOUT SANCHEZ,
Rule 1-017 Guardian ad litem for A.L. and W.L.,

        Plaintiffs,

v.                                                                NO.   D-202-CV-2019-07961

JACOB WOOTTON
and COUNTY OF BERNALILLO,

        Defendants,

## COMPLAINT FOR DAMAGES PURSUANT TO §41-4-12 OF THE NEW MEXICO TORT CLAIMS ACT

**COMES NOW**, Jessica Lowther, plaintiff, and Kelly Stout Sanchez, Rule 1-107 plaintiff and Guardian ad litem to the minor children, W. L. and A. L., by and through their attorneys of record, Rachel E. Higgins, Vincent J. War, and H. Jess Jacobus III, and assert this complaint for damages pursuant to the New Mexico Tort Claims Act.

On August 30th and August 31st of 2017, Plaintiff Jessica Lowther contends that Defendant BCSO entered her home without a warrant and absent exigent circumstances; illegally searched and seized her children; illegally detained her; illegally arrested her husband, Adam Lowther, and illegally retaliated against her for exercising her Fourth Amendment rights. These and other claims are presently the subject of a pending federal civil rights case in United States District Court, District of New Mexico. This state law complaint contains different claims and allegations which arise out of intentional and illegal conduct committed on November 7th, 2017. To the extent that facts which support Plaintiffs' federal claims are recited herein, it is only for the purpose of providing necessary historical context for Plaintiff's November 7th, 2017, arrest and subsequent



1

prosecution. Plaintiffs' state law claims arise out of Defendant Wootton's illegal seizure, arrest and malicious prosecution of Plaintiff Jessica Lowther on November 7th, 2017, and her children's resulting loss of consortium and association claims. No federal claims are asserted herein.

## I. BACKGROUND FACTS COMMON TO ALL CLAIMS

1. Adam and Plaintiff Jessica Lowther are married, and are the biological parents of A.L. and W.L., minor children, who were five years old and seven years old on November 7th, 2017.

2. Kelly Stout Sanchez, an attorney in good standing in the state of New Mexico, is the duly appointed Rule 1-017 Guardian ad litem to A.L. and W.L.

3. Defendant Wootton is a law enforcement officer pursuant to the New Mexico Tort Claims Act, section 41-4-12 et. seq. 1978, and at all times material hereto has waived immunity from suit pursuant to that Act regarding his actions herein.

4. Defendant Bernalillo County is a governmental entity as set forth under the New Mexico Tort Claims Act, N.M.S.A. 41-4-1, et. seq. 1978, and has waived immunity from suit regarding negligent hiring, retention and supervision of individuals whose conduct falls within an enumerated waiver of immunity under the Act.

5. During the time frame of the events at issue in this Complaint, the Lowthers resided in Albuquerque, Bernalillo County, New Mexico.

6. Adam Lowther was employed with the United States Air Force, and his assignment was located at Kirtland Air Force Base.

7. Prior to August 30th, 2017, Adam Lowther held the highest national security clearance available and was highly regarded as an international expert in the field of nuclear deterrence.

8. Plaintiff Jessica Lowther was a well-respected editor on contract with The Heritage Foundation, a nationally recognized think tank based in Washington, D.C.

9. In August 2017, the Lowthers enrolled their daughter, A.L., who was four years old at the time, in a private, Christian school called Calvary Christian Academy.

10. Within a week of A.L.'s enrollment, on August 30th, 2017, her teacher, Betty DuBoise, made an anonymous report to the state's Central Intake Line alleging that A.L. had made disclosures to her that she said amounted to possible abuse of A.L. by Adam Lowther.

11. The nature of DuBoise's report was that she witnessed A.L. with her hands in her underpants, and heard A.L. say to some boys on the playground "you have a penis."

12. DuBoise reported to Central Intake that she asked A.L. how she knew the word penis, and that in response A.L. made a series of statements, some of which objectively pertained to toileting, but which DuBoise felt should be reported as possible abuse.

13. DuBoise told Central Intake that she had asked A.L. whether A.L. had told Plaintiff Jessica Lowther these things, and A.L. responded that she had not.

14. The allegations made by DuBoise regarding Adam Lowther were untrue, or were interpreted through the context of abuse rather than toileting, or both.

15. None of A.L.'s alleged behaviors or statements related to Plaintiff Jessica Lowther and she was not a target of CYFD or BCSO's investigation into DuBoise's allegations.

16. As a result of DuBoise's report, CYFD assigned an investigator to look into the allegations.

17. The CYFD investigator requested that Defendant BCSO send personnel to the Lowther home to assist her with the investigation.

18. Several BCSO deputies were dispatched to the Lowther home, including Defendant Wootton.

19. Plaintiff Jessica Lowther was at home with her two children when deputies arrived, and since she was already on the telephone with Adam Lowther, she advised him that law enforcement was there.

20. Deputies informed Plaintiff Jessica Lowther that they needed to come inside her home to investigate the welfare of her children, but gave her no information about the allegations or that Adam Lowther was the target of the investigation.

21. Plaintiff specifically asked BSCO whether the complaint was against "both of us" or "one of us"? BCSO did not answer that question, but did inform her that a complaint had come from the school to which Plaintiff said "are you sure you have the right people?" She then stated she had the right to protect her home, her children and her family and felt uncomfortable.

22. As was her right under the circumstances, Plaintiff Jessica Lowther stated that she refused to allow deputies inside the home until Adam Lowther arrived home, which was imminent.

23. Plaintiff continued to decline to allow the officers entry into her home but the door was open and officers could plainly see that the children were in the home, that Adam Lowther was not at home, and that the children were not injured or in any danger.

24. When Adam Lowther arrived at home, he was immediately detained and was placed in the back of a BCSO patrol car.

25. Adam Lowther did not enter the home or speak to his wife or children.

26. Thereafter, BCSO officers persisted in refusing to tell Plaintiff what the allegations were, and one deputy commented, "I don't even know what she [Abby] said."

27. One of the male BSCO officers told Plaintiff that if this was his investigation, Plaintiff would be in handcuffs in the back of a patrol car right now; that medical was going to check the kids and she could choose to let BCSO in or be detained in the back of a patrol car.

28. BCSO deputies entered Plaintiff's home without her consent, a warrant or exigent or special circumstances.

29. Once in the home and standing by as paramedics examined A.L. and W.L., deputies still did not disclose to Plaintiff Jessica Lowther that Adam Lowther was alleged to be a danger to A.L.

30. BCSO officers confirmed through paramedic's medical evaluation and their own observations that there was no evidence to support allegations of abuse, or any imminent threat to the children's safety.

31. Nevertheless, A.L. and W.L. were removed from the Lowther home under Defendant Wootton's direction and authority, and transported to a Safehouse for interviews.

32. Defendant Wootton has admitted that there was no immediate threat to the children, and that he removed the children because Plaintiff Jessica Lowther was non-cooperative.

33. During the Safehouse interview, A.L. made statements that, again, were consistent with toileting conduct, but were construed to be evidence of possible abuse.

34. The Safehouse interview was used to justify a physical examination of A.L., which did not yield evidence of physical or sexual abuse.

35. As Plaintiff Jessica Lowther's children were being interviewed at the Safehouse, she was transported to BCSO headquarters for questioning, where she was detained for several hours.

36. Defendant Wootton, who attended the Safehouse interviews, arrived at the BSCO station and informed Plaintiff Jessica Lowther that her husband had sexually abused A.L.

37. Plaintiff Jessica Lowther expressed disbelief that her husband had abused A.L., but showed great concern that something bad may have happened to A.L.

38. Because of her failure to accept that Adam Lowther had sexually abused their daughter, Defendant Wootton deemed Plaintiff to be a "non-believing spouse" and decided that the children would continue to be on a 48-hour hold.

39. Defendant Wootton "strongly discouraged" CYFD from allowing Plaintiff Jessica Lowther to have any contact with A.L. and W.L. because she was a disbelieving spouse.

40. Subsequently, Plaintiff Jessica Lowther was named as a respondent in an action to determine abuse and neglect by CYFD, and was deprived of physical and legal custody of A.L. and W.L. for several months.

41. On August 31st, 2017, Defendant Wootton filed a criminal complaint in Metropolitan Court against Adam Lowther alleging abuse of A.L., and continued forward as the lead investigator on felony charges he intended to present to the grand jury as to Adam Lowther.

42. No criminal charges were filed against Plaintiff Jessica Lowther and none were being investigated.

43. The children were returned to Plaintiff Jessica Lowther on September 1st, where they remained until September 6th, 2017 on which date CYFD removed the children from Plaintiff's physical custody and placed them in foster care.

44. Plaintiff Jessica Lowther was allowed to begin visitation with her children on September 12th, 2017 under the strict supervision of CYFD personnel on a once a week, two hour per visit basis.

6

45. During this timeframe, Plaintiff Lowther's counsel filed pleadings to affect reunification of her and her children.

46. In October 2017, after exhaustive evaluation of Plaintiff's conduct during supervised visits, CYFD prepared to transition A.L. and W.L. back into Plaintiff Jessica Lowther's physical custody of Plaintiff Lowther in response to the Children's Court ordering the same.

47. Defendant Wootton, who was still attempting to build a criminal case to present to the grand jury regarding Adam Lowther, and was also actively participating in the CYFD case, was aware that reunification was imminent.

48. Defendant Wootton was also aware that the Court would hear the matter in November.

49. On October 19th, 2017, Defendant Wootton solicited a statement from Betty DuBoise, the original source of the allegation that Adam Lowther had abused A.L., and who was still A.L.'s preschool teacher.

50. DuBoise told Wootton that A.L. "disclosed [at school] that Mommy whispers in my ear, not to say anything, to be quiet."

51. Upon information and belief, neither on this or any prior date did Defendant Wootton do anything to investigate DuBoise's credibility of the veracity of her allegations.

52. Defendant Wootton knew that Plaintiff's interactions with her children were strictly and at all times supervised by CYFD, yet he did not contact CYFD employees to confirm or dispel DuBoise's statements.

53. Instead, Defendant Wootton caused A.L. to be subjected to yet another safehouse interview on October 20th, 2017.

54. During this safehouse interview, no statements were made by A.L. which supported probable cause to believe Plaintiff Jessica Lowther had committed any crime.

55. Indeed, statements during the safehouse interview regarding Plaintiff Jessica Lowther were entirely exculpatory.

56. Nevertheless, Defendant Wootton obtained an affidavit from Betty DuBoise containing information he knew, should have known, or would have known upon minimal investigation, was false.

57. Defendant Wootton held back this information and took no action on DuBoise's allegations until November 7th, 2017, the date that the Children's Court Division of the Second Judicial District entered an order to return physical custody of W.L. and A.L. to Plaintiff Jessica Lowther.

58. On this date, Defendant Wootton entered the Court's chambers and told Judge Parnall that if he returned the children to Plaintiff Jessica Lowther, it would destroy his case against Adam Lowther.

59. The Court nevertheless entered an order to reunify Plaintiff with her children.

60. Thereafter, in open court, as she waited to be reunified with A.L. and W.L., Defendant Wootton arrested Plaintiff Jessica Lowther.

61. Plaintiff Jessica Lowther was transported to MDC where she was stripped, cavity searched, and booked into custody for the felony charge of tampering with a witness.

62. Defendant Wootton proceeded to file this charge against Plaintiff Jessica Lowther, which he knew was unfounded and false.

63. Plaintiff's arraignment occurred two days later. Defendant Wootton appeared personally at this arraignment, implored the judge not to allow the children to be returned to Plaintiff, and represented he may pursue additional charges against her.

64. On or before this date, Defendant Wootton knew that Adam Lowther had passed an independent polygraph test regarding the alleged abuse of A.L.

65. On or before this date, Defendant Wootton knew that fully executed state and federal search warrants yielded no information to corroborate that A.L. had been abused.

66. On or before this date, Defendant Wootton knew that A.L.'s physical examination did not produce evidence that she had been sexually or physically abused.

67. Nevertheless, Defendant Wootton arrested Plaintiff Jessica Lowther and charged her with a crime to prevent her from being reunified with her children.

68. On January 9th, 2018, the charges filed by Defendant Wootton against Plaintiff Jessica Lowther were dismissed via nolle prosequi.

69. On April 30th, 2018, the CYFD case was dismissed and the Lowther family was reunified.

70. On October 18th, 2018, the Second Judicial District Attorney issued a letter to Defendant Wootton declining to prosecute Adam Lowther for a myriad of reasons to include a defective Safehouse interview, insufficient evidence, tainted evidence, lack of corroboration of A.L.'s statements, polygraph results which weighed in favor of Adam Lowther's veracity, lack of evidence on electronic devices, and A.L.'s incompetence as a witness.

## COUNT I: FALSE IMPRISONMENT AND ARREST PURSUANT TO §41-4-12 (NEW MEXICO TORT CLAIMS ACT)

71. Plaintiff reincorporates all allegations set forth previously as if fully incorporated herein.

72. Defendant Wootton is a law enforcement officer pursuant to NMSA §41-4-12, and is liable for damages caused by false imprisonment and arrest.

73. Defendant Wootton lacked probable cause to support Plaintiff Lowther's arrest.

74. Defendant Wootton's actions were intentional, without consent, and with the knowledge that he lacked lawful authority to confine and arrest Plaintiff.

75. An objectively reasonable officer would have understood that there was no probable cause to arrest and criminally charge Plaintiff Lowther.

76. Defendant Wootton acted in bad faith.

77. Defendant Wootton caused Plaintiff Jessica Lowther to suffer personal injury, loss of consortium and property damage as a result of the false imprisonment and arrest, all in an amount for the jury to determine herein.

## COUNT II: MALICIOUS ABUSE OF PROCESS PURSUANT TO §41-4-12 (NEW MEXICO TORT CLAIMS ACT)

78. Plaintiff reincorporates all allegations set forth previously as if fully set forth herein.

79. Defendant Wootton initiated judicial proceedings against Plaintiff and misused the legal process.

80. Defendant Wootton's primary motive in misusing the legal process was to accomplish the illegitimate end of maintaining the strength of his criminal investigation against another party—Adam Lowther.

81. Defendant Wootton's conduct caused Plaintiff Jessica Lowther to suffer personal injury, loss of consortium and property damage as a result, all in an amount for a jury to determine herein.

## COUNT III: NEGLIGENT TRAINING, SUPERVISION AND RETENTION CLAIM AGAINST DEFENDANT BCSO

82. Plaintiff reincorporates all allegations set forth previously as if fully set forth herein.

83. Defendant Wootton was employed by Defendant BCSO, which had a duty to train and supervise Defendant Wootton adequately at all relevant times.

84. Due to Defendant BCSO's failure to adequately train and supervise Defendant Wootton, Defendant Wootton committed the intentional torts complained of herein thus inadequate training and supervision caused Defendant Wootton's commission of intentional torts.

85. As a direct and proximate result of the failure of Defendant Bernalillo County to train and supervise Defendant Wootton, Plaintiffs sustained personal injury, loss of consortium, and property damages, all in an amount for the jury to determine herein.

## COUNT IV: LOSS OF CONSORTIUM

1. Plaintiffs reincorporate all allegations set forth previously as if fully set forth herein.
2. Plaintiff Kelly Stout Sanchez asserts loss of consortium claims on behalf of A.L. and W.L., who were prevented from receiving guidance and support from Plaintiff Jessica Lowther during such time that Plaintiff Jessica Lowther was under arrest, incarcerated, and under the threat of malicious criminal prosecution for the false arrest alleged herein.
3. A.L. and W.L. were anticipating reunification with their mother, and sustained loss of consortium damages during the prolonged period of separation, and after they were reunited with their mother during the timeframe for which she was under the threat of malicious criminal prosecution for the false arrest alleged herein.
4. A.L. and W.L.'s damages for loss of consortium were proximately caused by Defendant Wootton's intentional acts and by Defendant Bernalillo County's negligent training and supervision, which resulted in Defendant Wootton's commission of intentional torts.

WHEREFORE, Plaintiffs respectfully request this Court to enter judgment against the Defendants Jacob Wootton and Defendant Board of County Commissioners of Bernalillo County in an amount to be proven at trial for compensatory damages and any and all other relief to which Plaintiffs are entitled to by law.

Respectfully Submitted:

*/s/ Rachel E. Higgins*
Rachel E. Higgins
Rachel E. Higgins, Attorney at Law
111 Tulane Drive SE
Albuquerque, NM 87106
Phone: (505) 247-9339
Facsimile: (505) 243-9882
Email: rachel@rachelhigginslaw.com

Vincent J. Ward
H. Jesse Jacobus, III
Freedman Boyd Hollander Goldberg Urias
& Ward PA
20 First Plaza NW, Suite 700
Albuquerque, NM 87102
Phone: (505) 842-9960
Email: vjw@fbdlaw.com
        hjj@fbdlaw.com

**ATTORNEYS FOR PLAINTIFF**